IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LOMESIA DEAN,

              Plaintiff,

vs.                              Case No. 09-1317-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 5, 2009, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 8-16). Plaintiff alleges that she has been disabled since March 23, 2007 (R. at 8). Plaintiff is insured for disability insurance benefits through September 30, 2010 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 10). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative

disc disease and status post open reduction with internal fixation of the right ankle (R. at 10).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11).  After determining plaintiff's RFC (R. at 11-12), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 14).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 15).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 15).

**III.  Did the ALJ err by failing to consider plaintiff's obesity?**

SSR 02-1p (evaluation of obesity) states that in the absence of evidence to the contrary, the Commissioner will accept a diagnosis of obesity given by a treating source or a consultative examiner.  2002 WL 32255132 at *4.  It further states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions.  Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment.  Obesity may also affect the claimant's ability to sustain a function over time.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  2002 WL 32255132 at *7.  The

5

discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

Plaintiff asserts that the ALJ erred by failing to mention obesity in his decision. Plaintiff is correct that the ALJ did not expressly mention obesity in his decision. The issue before the court is whether, on the facts of this case, the failure by the ALJ to mention plaintiff's obesity requires that the case be remanded for further hearing.

In his decision, the ALJ mentioned a state agency physical RFC assessment by Ms. Campion. Ms. Campion opined that plaintiff had postural and environmental limitations because of her obesity (R. at 237, 239), and further referenced plaintiff's obesity as a factor in discussing plaintiff's allegations, activities of daily living and credibility, and medical source opinions (R. at 242). The ALJ gave some weight to this opinion, but stated that additional evidence warranted limiting plaintiff to sedentary work (R. at 13).

The ALJ also mentioned a state agency RFC assessment by Dr. Tawadros. Dr. Tawadros also referenced plaintiff's obesity in her assessment, noting that her knee restrictions were due to mechanical restrictions of obesity (R. at 267). The ALJ considered her opinions, but stated that additional evidence

6

warranted limiting plaintiff to sedentary work (R. at 13-14).
Furthermore, at the hearing, the vocational expert (VE), when
presented with the physical RFC assessment by Dr. Tawadros,
stated that there would only be a 3-5% reduction in the sedentary
unskilled work base because of the limitations set out in her
assessment (R. at 358-359).

The ALJ also referenced a consultative physical assessment
by Dr. Venkat, including his findings that plaintiff had mild to
moderate difficulties with orthopedic maneuvers (R. at 12, 257).
Dr. Venkat mentioned that plaintiff had morbid obesity (R. at
256), and noted that weight loss would be helpful (R. at 257).
This consultative examination, and its reference to plaintiff's
obesity, was also discussed by Dr. Tawadros in making his
physical RFC assessment of the plaintiff (R. at 267).

Finally, the court would note that at the hearing, plaintiff
was asked the following:

> Q (by plaintiff's counsel):...And you
> mentioned just now that being the heavier,
> you have lost weight.  Can, at this point,
> can you determine whether there's any
> limitations or problems you have of
> functioning due to your weight?  Does it
> cause any extra problems that you're aware
> of?
>
> A (by plaintiff): No, not that I'm aware of.

(R. at 355).

The ALJ, in making his RFC findings, considered physical RFC
assessments or consultative evaluations which took into account

plaintiff's obesity. The ALJ's RFC findings are consistent with the limitations set out in the medical opinion evidence, and are, in some respects, even more restrictive. There is no medical opinion evidence in the record that plaintiff has limitations not included in the ALJ's RFC findings or in the hypothetical question to the VE. Given the fact that: 1) the medical opinion evidence regarding plaintiff's limitations which was relied on by the ALJ in making his RFC findings took into account plaintiff's obesity, 2) plaintiff does not cite to any medical evidence that there were other areas impacted by plaintiff's obesity, and 3) plaintiff testified that her obesity does not cause any limitations, the court finds no error by the ALJ because he did not expressly mention plaintiff's obesity. See Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2005)(court rejected argument that ALJ failed to properly consider plaintiff' obesity because the consultative examination, which took into account plaintiff's obesity, supports the ALJ's RFC determination, claimant did not discuss or cite to medical evidence about other areas which were impacted by her obesity, and claimant's testimony did not contradict the ALJ's conclusion that she can perform light work). To the extent that the ALJ should have expressly mentioned plaintiff's obesity, any such error is clearly harmless in light of the facts of this case, including the fact that the ALJ's RFC findings are consistent with, or even

more restrictive than the medical opinion evidence regarding plaintiff's limitations.[1]  The court finds that no reasonable factfinder, based on the medical opinion evidence and plaintiff's testimony, could have found that plaintiff's obesity would result in additional limitations not set forth in plaintiff's RFC.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 30th day of November, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[1] Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).